IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JOHN E. HAMILTON,                          )
                                           )
              Petitioner,                  )
                                           )
       v.                                  )        1:17-cv-245 (LMB)
                                           )
HAROLD W. CLARKE, Director of              )
Virginia Department of Corrections,        )
                                           )
              Respondent.                  )

## MEMORANDUM OPINION

In this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, John Hamilton

("petitioner" or "Hamilton") seeks an order vacating the Supreme Court of Virginia's decision,

which upheld "his convictions for two counts of aggravated sexual battery, one count of sodomy,

one count of indecent liberties with a child under the age of 14, and one count of indecent

liberties by a person in a custodial position." Amend. Pet. at 1.

Before the Court is respondent's Rule 5 Answer and Motion to Dismiss to which

petitioner, who is represented by counsel, has filed a response. For the reasons that follow, the

motion to dismiss will be granted.

## I.    BACKGROUND

### A.  **Circuit Court Proceedings**

This case arose from allegations that petitioner, a former little league coach, sexually

abused several minors in Fairfax County over an extended period of time. See Amend. Pet. at 1;

[Dkt. No. 14]. Although the initial allegation came from one individual, as the investigation

progressed multiple victims came forward to report that when they were children, they were

molested by petitioner. Before being indicted, petitioner hired counsel who reached an agreement

with the prosecution under which Hamilton would plead guilty to one sex offense for each of the five known victims. Id. at 1-2. As part of this agreement, Hamilton agreed to meet with Fairfax County Police detectives and disclose all of his sexual crimes in exchange for immunity for everything disclosed except for facts relating to the five offenses to which he agreed to plead guilty. Id.

On August 17, 2009, after being interviewed, Hamilton was indicted on five counts: two counts of aggravated sexual battery in violation of Va. Code § 18.2-67.3, two counts of indecent liberties with a child in violation of Va. Code § 18.2-370, and one count of sodomy (crimes against nature) in violation of Va. Code § 18.2-361(A). See Indictment, Commonwealth v. Hamilton, Nos. FE-2009-1470 to -73, 1478 (Va. Cir. Ct. Aug 17, 2009).

On October 7, 2009, Hamilton failed to appear for the scheduled plea hearing. Amend. Pet. at 2-3. He had travelled to Germany with his mother on August 26, 2009, and instead of returning to the United States, he remained in Europe. Id. After the circuit court issued a bench warrant for his arrest, an international arrest warrant was issued, resulting in petitioner being detained in Poland on August 25, 2010. Id. at 3. In September 2010, the United States and the Fairfax Commonwealth's Attorney formally requested that petitioner be extradited back to the United States on the basis of the five crimes for which he had been indicted. See [Dkt. No. 7] at 125-33. Hamilton was extradited back to the United States on or about January 20, 2011. Amend. Pet. at 3.

On March 29, 2011, Hamilton pleaded guilty to the five charges in the indictment. At the plea hearing, the prosecutor proffered the following facts in support of the charges:[1]

---

[1] Following the proffer, the court asked defense counsel whether he accepted the proffer or wanted to add anything. Plea Hr'g Tr. 21, March 29, 2011. Counsel responded that he "can't disagree that will be the Commonwealth's evidence" and that the proffer was "fact sufficient" to

[I]f these [cases] had gone to trial the Commonwealth's evidence would be that for Felony 2009-1471, in 2009 a young man by the name of [K.E.] came forward to the Fairfax County Police Department and reported that his little league coach, . . . John E. Hamilton, had sexually molested him when he was 12 years old. During the summer of 1997.

[K.E.] reported that one day after baseball practice he was in [Hamilton's] vehicle, in the parking lot of Carl Sandburg Middle School, and [Hamilton] grabbed [K.E.'s] penis inside his pants and then pulled his own penis out and masturbated in front of [K.E.].

[K.E.] also reported that [on] one occasion when he was cleaning [Hamilton]'s apartment in exchange for payment he observed [Hamilton] disrobe and masturbate while watching [K.E.] clean.

. . . Detective Jeremy Hinson of the Fairfax County Police Department investigated [K.E.'s] report and went to [Hamilton's] residence to interview him. A 16 year old Danish foreign exchange student named [F.G] came to the door. Shortly after introducing himself as a police officer, [F.G.] told Detective Hinson that [Hamilton] walked around naked in front of [F.G.] and had [F.G.] wake him up in the mornings before school.

When [F.G.] would wake [Hamilton] he would be naked, uncovered in his bed and aroused. During a subsequent interview [F.G.] reported that within a week of his arrival in fall of 2008, [Hamilton] had masturbated in front of him, masturbated [F.G.] and performed fellatio on [F.G.]. [Hamilton] also performed massage on [F.G.] which . . . ended in fellatio and anal intercourse. . . . [T]hose facts related to felony 2009-1473.

A press release on Detective Hinson's investigation resulted in several victims coming forward to report that they too had been molested by [Hamilton] when they were children. With regard to felony 2009-1470, [J.C.] reported that he met [Hamilton] as his little league baseball coach back in 1991. [Hamilton] moved into [J.C.'s] home to act as a nanny to assist [J.C.'s] father, who was a widower. When [J.C.] was between the ages of 10 and 13, [Hamilton] began exposing himself and walking naked around [J.C.].

[Hamilton] would masturbate [J.C.] and have [J.C.] masturbate him. He escalated to performing fellatio on [J.C.] and having [J.C.] perform fellatio on him and [J.C.] reported that this would occur approximately three to four times per week.

For Felony 2009-1472, [T.T.] reported to Fairfax County Police that he met [Hamilton] as a little league baseball coach in 1999. [T.T.], then age 14, had asked [Hamilton] for extra batting practice so that he could attempt to get on the junior varsity team.

Since his parents had a hectic work schedule [Hamilton] would pick [T.T.] up and take him home after these batting practices. During that time [Hamilton] would take [T.T.] and another boy bowling and he bargained with them that if he beat them in bowling[,] they would have to do yard work or painting at his house.

support Hamilton's pleas, but he stated the defense would "reserve for a time [their] version in the presentence report." Id. Petitioner has not provided an alternate version of the facts.

On several occasions when [T.T.] was doing the yard work or painting at [Hamilton's] home, [Hamilton] would wear only boxer shorts and would get erections and his penis would come out the slit of the boxer shorts and [he] would turn towards [T.T.] to show him his penis.

For Felony 2009-1478, the facts would be that [Hamilton] was the coach for the Fort Hunt Little League All-stars when a boy named [P.V.] was 11 years old, in the fall of 2001. One of [Hamilton's] duties was to take care of mowing the grass on the baseball field during that summer.

[Hamilton] allowed [P.V.] to help and offered to teach him how to drive the tractor and had [P.V.] sit on his lap. While driving that tractor [Hamilton] would place his hand on [P.V.'s] penis through his shorts. [P.V.] attempted to move [his] hand away but [Hamilton] would just put his hand back on [P.V.'s] penis. And this continued until [P.V.] stopped resisting. [P.V.] could also feel [Hamilton's] own erection through his shorts.

On other occasions [Hamilton] would touch [P.V.] while in his car and masturbated [P.V.] to the point of ejaculation. On another occasion [Hamilton] had [P.V.] at his own home and [he] attempted anal intercourse on [P.V.] and performed fellatio on [him].

All of the above events took place within Fairfax County.

During the plea colloquy, the Commonwealth attorney also mentioned that petitioner had failed to appear at his original plea hearing because he had travelled to Europe before his court date and refused to return, forcing the Commonwealth "to obtain an international red notice through INTERPOL." [Dkt. No. 9] at 252. The prosecutor further stated that Hamilton had been arrested by Polish border guards as he attempted to enter Poland. Id.

Hamilton was sentenced on June 24, 2011. Id. at 256. As part of its sentencing memorandum, the prosecution included portions of Hamilton's interview session with Detective Hinson. Id. at 261-62.[2] Hamilton's trial counsel objected to the inclusion of the debriefing transcripts as a violation of the plea agreement, which stated that the "contents of the discussion with Detective Hinson will not be turned over to any other law enforcement agency or be used against him in any legal proceeding, including sentencing except as it pertains to the five charges

---

[2] A transcript of his initial interview with Detective Hinson was attached as Exhibit 1, and portions of his debriefing sessions were attached as Exhibit 2. Those debriefing sessions included detailed descriptions of Hamilton's sexual conduct with each of the five victims.

to which he has pleaded guilty." Id. at 338. The circuit court reviewed the proffered memorandum and exhibits, and ruled that the inclusion of the transcripts was not a violation of the plea agreement. Id. at 263-64. Further, the court heard testimony from five witnesses, including four of the five victims and the mother of one of the victims, regarding the length of the abuse and the manner in which it was carried out. Id. at 268-295.[3]

Hamilton was sentenced to 20 years on each of the two counts of aggravated sexual battery, and five years for each of the other counts. Id. at 316-17, 321. Each sentence was imposed to run consecutively, resulting in a total sentence of 55 years of incarceration.[4] Id. In reaching this sentence, the court found that the sentencing guidelines, which recommended a high end of 13 years, did not properly reflect the extreme abuses perpetrated by petitioner. See id. at 315-16; [Dkt. No. 14], Ex. A at 4. The court concluded that the conduct at issue and petitioner's abuse of a position of trust warranted an upward departure. See [Dkt. No. 9] at 315-316.

### B. Direct Appeals

Hamilton timely filed a notice of appeal, asserting three assignments of error by the circuit court. Amend. Pet. at 5. Specifically, he alleged that the court erred in allowing evidence of unrelated criminal accusations in violation of the plea agreement, in refusing to grant a continuance to enable him to file a motion for resentencing, and in failing to comply with Va.

---

[3] F.G., the 16-year-old exchange student who lived with Hamilton, did not testify.

[4] In addition, Hamilton was sentenced to three years of "suspended confinement pursuant to post-release supervision under 19.2-295.2 of the code," for each count. See [Dkt. No. 9] at 316-321. On November 29, 2011, the sentencing court issued an Amended Sentencing Order "delet[ing] the requirement for Post Release Supervision for three (3) years" with respect to count FE-2009-1470. Amended Sentencing Order, Commonwealth v. Hamilton, No. FE-2009-1470 (Va. Cir. Ct. Nov. 29, 2011).

Code Ann. § 9.1-902(H).[5] Id. Hamilton's petition for appeal was denied with respect to the first

two assignments of errors, and allowed as to whether the circuit court complied with § 9.1-

902(H). The Court of Appeals rejected this argument after considering it and affirmed

Hamilton's convictions and sentences. See Hamilton v. Commonwealth, 738 S.E.2d 525 (2013).

The Supreme Court of Virginia denied Hamilton's petition for further review. See Amend. Pet.

at 5.

### C. State Court Habeas Petitions

On September 24, 2014, Hamilton filed a timely habeas corpus petition in the Circuit

Court for Fairfax County, alleging six assignments of error. See Petition for Writ of Habeas

Corpus, Hamilton v. Wright, No. 2014-12512 (Va. Cir. Ct. June 10, 2015). First, he argued that

his conviction for sodomy must be vacated as void ab initio under the Supreme Court's decision

in Lawrence v. Texas, 539 U.S. 558 (2003) and the Fourth Circuit's decision in MacDonald v.

Moose, 710 F.3d 154 (4th Cir. 2013). Second, he argued that the Commonwealth violated the

Supreme Court decisions in Brady v. Maryland, 373 U.S. 83 (1963) and Napue v. Illinois, 360

U.S. 264 (1959) by concealing exculpatory evidence and presenting false evidence when it

allowed Detective Hinson to assert that petitioner had stated he was sexually abused but could

---

[5] Section 9.1-902(H) states, in relevant part:

> Prior to entering judgment of conviction of an offense for which registration is required if the victim of the offense was a minor . . . the court shall determine by a preponderance of the evidence whether the victim of the offense was a minor . . . as defined in [Virginia Code] § 18.2-67.10, and shall also determine the age of the victim at the time of the offense if it determines the victim to be a minor. Upon such a determination the court shall advise the defendant of its determination and of the defendant's right to withdraw a plea of guilty . . . .

Petitioner argued that the sentencing court failed to find the age of the victims by a preponderance of the evidence and did not afford petitioner an opportunity to withdraw his guilty plea. See Petition for Appeal at 19-21, Hamilton v. Commonwealth, No. 1922-11-4 (Va. Ct. App. Mar. 15, 2012).

not recall the name of his abuser.[6] Additionally, Hamilton raised four distinct claims of ineffective assistance of counsel, claiming that his trial counsel was ineffective by failing to argue at the sentencing hearing that the extradition treaty between the United States and Poland had been violated; failing to memorialize properly the plea agreement to reflect his understanding of the charges to which he would plead guilty; and failing to object to the admission of the interview transcripts at the sentencing hearing in violation of that agreement. He also alleged that his appellate counsel was ineffective because he failed to identify the correct exhibit attached to the sentencing memorandum as a violation of the plea agreement. See Petition for Writ of Habeas Corpus at 14 -34, Hamilton v. Wright, No. 2014-12512.

On January 29, 2015, respondent moved to dismiss the petition, and Hamilton timely filed a response. Amend. Pet. at 5-6. On March 30, 2015, at the circuit court's direction, both parties filed supplemental pleadings addressing, among other issues, the impact of the Supreme Court of Virginia's decision in Toghill v. Commonwealth, 768 S.E.2d 674 (2015).

On June 1, 2015, the circuit court issued a letter opinion denying Hamilton's request for habeas relief. See id., Ex. A. As to the first claim, the court found that Hamilton's conviction for sodomy was not void under Lawrence because the Supreme Court of Virginia had narrowed the construction of the sodomy statute in Toghill, a decision which directly applied to the facts of Hamilton's case. Id. at 2. As to Hamilton's allegations of Brady and Napue violations, the state court found that these claims were procedurally barred because he failed to raise either issue at his sentencing hearing or on direct appeal, and regardless of that failure, on the merits the claims

---

[6] Hamilton also argued in a footnote, that "[i]n the alternative or in addition," that his trial counsel was deficient because he "failed to obtain or present evidence that Hamilton had revealed the name of his abuser." Petition for Writ of Habeas Corpus at 34 n.3, Hamilton, No. 2014-12512.

failed because the evidence allegedly concealed was not material to the sentencing decision. Id. at 6-7.

With respect to Hamilton's ineffective assistance claims, the state court recited the standard announced in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) and concluded that all of Hamilton's arguments were meritless. Id. at 3-5. With respect to Hamilton's claim that the extradition treaty had been violated, the court found that because petitioner was not actually punished for any conduct apart from the five charges for which he was extradited, there was no extradition violation upon which his counsel could object to the sentencing decision. Id. at 3-4. With respect to alleged violations of the plea agreement, the court found that there was no evidence that petitioner would have rejected his plea agreement but for counsel's error, and that he suffered no prejudice because the court recognized that it could only sentence petitioner for the crimes to which he pleaded guilty. Id. at 4-5. The court explained that any error in the plea agreement concerning the type of charge to which he would plead guilty was overshadowed by the admissible evidence at sentencing, including the victim impact statements and the court's own decision that the petitioner's conduct warranted an upward departure from the sentencing guidelines. Id. Similarly, the court pointed out that Hamilton's counsel did object to the use of the interview transcripts, but the sentencing court overruled the objection, and therefore counsel's performance was not deficient. Id. The court also found that appellate counsel was not ineffective because regardless of whether counsel properly identified the exhibits in his pleading, the appeals court considered both exhibits when denying petitioner's assignment of error. Id. at 5.

Hamilton timely appealed the habeas judgment to the Supreme Court of Virginia, which found no reversible error in the circuit court's judgment and refused the petition for appeal. See Hamilton v. Commonwealth, No. 151362 (Va. Dec. 7, 2016).

## II.    DISCUSSION

### A.  Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas corpus petition, a federal court may not grant the petition on that particular claim unless the state court's adjudication was contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts developed in the record. 28 U.S.C. § 2254(d)(1)-(2). This test erects a "formidable barrier to federal habeas relief" for claims adjudicated on the merits. Burt v. Titlow, 134 S. Ct. 10, 16 (2013). Under this standard, for a petitioner to obtain habeas relief, he "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based upon an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination violates the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. When reviewing the state court's findings, the federal court is limited to the record before the state court at the time of the decision. See Cullen v. Pinholster, 563 U.S. 170, 181-82 (2011).

9

Under the "unreasonable application" standard, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the [petitioner]'s case." Williams, 529 U.S. at 413. Importantly, this standard of reasonableness is an objective one and does not allow a federal court to review simply for plain error. Id. at 409-10. In addition, a federal court should review the state court determination with deference; a federal court cannot grant the writ simply because it concludes that the state court incorrectly applied the legal standard. See Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (internal citations omitted). A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

### B. Analysis

Petitioner first argues that the state court rulings are not entitled to deference because the "factual record in [his] case was truncated by the state habeas court's unwillingness to develop a factual record through an evidentiary hearing." Amend. Pet. at 9. On this basis, petitioner claims that his petition should be reviewed de novo. See id. (citing Gordon v. Braxton, 780 F.3d 196, 202 (4th Cir. 2015)).

A state court's decision must qualify as an "adjudicat[ion] on the merits" to trigger AEDPA deference. Winston v. Kelly (Winston I), 592 F.3d 535, 553-54 (4th Cir. 2010). If it does not, review in the federal courts is de novo. See Winston v. Pearson (Winston II), 683 F.3d 489, 499 (4th Cir. 2012). In Gordon, the Fourth Circuit held that a state court's unreasonable refusal "to permit further development of the facts of [a] claim" does not qualify as an

adjudication on the merits. 780 F.3d at 202 (internal quotation marks and citation omitted). The outcome of <u>Gordon</u> turned on a credibility contest between the petitioner, Gordon, who asserted that he asked counsel (orally and in writing) to file an appeal, and counsel, who denied ever receiving an explicit request. <u>Id.</u> at 203. Emphasizing the lower standard of legal draftsmanship applicable to <u>pro se</u> habeas petitioners, the Fourth Circuit found that the state court erred in focusing "on one line in Gordon's affidavit, while ignoring Gordon's allegations in his papers that he asked [counsel] to file an appeal" instead of holding "an evidentiary hearing to develop the record and resolve this credibility contest," and that because "the state court did not adjudicate Gordon's claim on the merits, and the district court owed no deference to the state court's ruling." <u>Id.</u> at 203-04.

Respondent counters that the facts and circumstances in <u>Gordon</u> differ from those of the present case. [Dkt. No. 14] at 15-16. The Court agrees. Here, the full record of the criminal proceedings and factual findings were before the state habeas court. Indeed, the same judge who presided over the original criminal proceeding reviewed the state habeas claim. <u>See</u> Plea Hr'g Tr. at 21, March 29, 2011; [Dkt. No. 14], Ex. A. Thus, unlike the state court in <u>Gordon</u>, the state habeas court in this case evaluated all of the factual circumstances when determining that petitioner's claims lacked merit. [Dkt. No. 14], Ex. A. The court did not rely solely on "one line" of the Commonwealth's evidence or ignore any allegations in Hamilton's petition. Although petitioner alleges that his petition is based on new evidence, he does not identify what evidence the state court ignored and a review of the court's opinion shows it directly addressed each of petitioner's assertions. <u>See id.</u> On this record, the state habeas court's refusal to hold an evidentiary hearing was not unreasonable, <u>see</u> <u>Stoffa v. Kiser</u>, No. 2:16-cv-207, 2016 WL

4154928, at *6-7 (E.D. Va. July 8, 2016). Therefore, the Court finds that the state habeas court adjudicated petitioner's claims on the merits, and AEDPA deference will apply.

## C. Claim I

Petitioner's first claim is that his conviction under Virginia Code § 18.2-361(A), Virginia's sodomy statute, must be vacated as void ab initio because the statute was facially unconstitutional after Lawrence v. Texas, 539 U.S. 558 (2003). Amend. Pet. at 9. Respondent counters that petitioner lacks standing to bring a facial challenge to Virginia's sodomy statute and that the Supreme Court of Virginia has since narrowly construed § 18.2-361(A) to only its constitutional limits, and therefore the conviction is not void. [Dkt. No. 14] at 17 -21.

In MacDonald v. Moose, the Fourth Circuit granted habeas relief to a Virginia inmate who had been convicted of soliciting a minor to commit a felony. 710 F.3d 154 (4th Cir. 2013). The predicate felony charged was MacDonald's solicitation of the minor to perform oral sex on him, in violation of Virginia's "Crimes Against Nature" statute, Virginia Code § 18.2-361(A), which criminalized carnal knowledge "by the anus or by or with the mouth," commonly known as sodomy.[7] Relying upon Lawrence, 539 U.S. 558, which struck down Texas' anti-sodomy statute as unconstitutional, the Fourth Circuit held that section 18.2-361(A) was facially unconstitutional because by its terms it criminalized sodomy between consenting adults, and thus could not support MacDonald's solicitation conviction, even though his actual conduct involved a minor. See id. at 156. The Fourth Circuit concluded that the Virginia courts unreasonably

---

[7] At the time of petitioner's conviction, § 18.2-361(A) provided in relevant part that "any person [who] carnally knows in any manner, any brute animal, or carnally knows any male or female person by the anus or by or with the mouth, or voluntarily submits to such carnal knowledge, he or she shall be guilty of a Class 6 felony." The Virginia General Assembly amended this section in 2014 to remove the anti-sodomy provision at issue. See 2014 Va. Acts ch. 794. The statute currently reads: "If any person carnally knows in any manner any brute animal or voluntarily submits to such carnal knowledge, he is guilty of a Class 6 felony."

applied <u>Lawrence</u> in determining that MacDonald lacked standing to attack the statute because it held that the statute was facially unconstitutional when applied to any person. <u>Id.</u> at 158.

In <u>Toghill v. Commonwealth</u>, a case based on sodomy with a minor, the Supreme Court of Virginia disagreed with the Fourth Circuit's review of § 18.2-361(A), and reaffirmed the constitutionality of § 18.2-361(A) as applied to conduct involving a minor. 768 S.E.2d 674, 679 (Va. 2015). In reaching its decision, the court expressly declined to follow the Fourth Circuit's holding in <u>MacDonald</u>, observing that the decision provided only persuasive authority. <u>Id.</u> at 677.[8] The <u>Toghill</u> court stressed that the "normal rule is that partial, rather than facial invalidation [of a statute] is the required course . . . [because courts] try not to nullify more of a legislature's work than is necessary." <u>Toghill</u>, 768 S.E.2d at 680 (quoting <u>Ayotte v. Planned Parenthood of Northern New England</u>, 546 U.S. 320, 329 (2004) (internal citations and quotation marks omitted)), and partial invalidation does less to frustrate the "intent of the elected representatives of the people." <u>Id.</u> at 680-81. Moreover, the Supreme Court of Virginia cited with approval some aspects of the dissenting opinion in <u>MacDonald</u>, which emphasized the deference federal courts owed to state court decisions on habeas review. <u>See Toghill</u>, 768 S.E.2d at 679 n.4 (citing <u>MacDonald</u>, 710 F.3d at 169 (Diaz, J., dissenting)); <u>see also id.</u> at 683-84 (Mims, J., concurring) (citing <u>MacDonald</u>, 710 F.3d at 167 (Diaz, J., dissenting)).

Under AEDPA, a state habeas decision may only be reversed if it is contrary to, or an unreasonable application of, clearly established federal law <u>as determined by the United States</u>

---

[8] Hamilton's suggestion that the Supreme Court of Virginia should treat the <u>MacDonald</u> decision as binding authority is incorrect. State courts are not bound to follow the rulings of federal courts, even on questions of federal law. <u>See Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 58 n.11 (1997) (criticizing the Ninth Circuit for suggesting that a state court would be bound by a federal court of appeals construction of federal law); <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 375-76 (1993) (Thomas, J., concurring) ("The Supremacy Clause demands that state law yield to federal law, but neither federal supremacy nor any other principle of federal law requires that a state court's interpretation of federal law give way to a (lower) federal court's interpretation.").

Supreme Court. 28 U.S.C. § 2254(d)(1) (emphasis added). The Court has recognized that AEDPA "restricts the source of clearly established law to [Supreme Court] jurisprudence." Williams, 529 U.S. at 404-05, 412. Circuit decisions are thus only persuasive authority when evaluating habeas petitions under the AEDPA standard. See Moore v. Morton, 255 F.3d 95, 105 (3d Cir. 2001); Duhaime v. Ducharme, 200 F.3d 597, 599-602 (9th Cir. 2000); see also Harris v. Stovall, 212 F.3d 940, 943 (6th Cir. 2002) (It was error for the district court to rely on authority other than that of the Supreme Court of the United States in its analysis under § 2254(d)."). Although the Fourth Circuit's reasoning in MacDonald may provide helpful insight into determining what Supreme Court law is clearly established, it is not directly binding on this Court in these circumstances.

That being said, the Court may not simply rubber-stamp the Virginia courts' decision. See Miller-El, 545 U.S at 240, 265 (2005). Although the state decision is owed considerable deference, if it failed to apply the appropriate standard, or decided a case differently than the Supreme Court on materially indistinguishable facts, the decision must be reversed. Williams, 529 U.S. at 412. The state habeas court relied on Toghill to find that Hamilton's conviction could be upheld. [Dkt. No. 14], Ex. A at 2. Therefore, the Court must determine whether the Supreme Court of Virginia's reasoning in Toghill was an unreasonable application of United States Supreme Court precedent.

The Toghill court relied on Lawrence v. Texas to determine whether Virginia Code § 18.2-361(A) could be lawfully applied. Toghill, 768 S.E.2d at 679-81. In Lawrence, the Texas sodomy statute at issue prohibited oral sex with another person of the same sex, and the question presented to the court was "whether petitioners were free as adults to engage in private conduct

14

in the exercise of their liberty under the Due Process Clause of the Fourteenth Amendment to the Constitution." 539 U.S. at 564.

The Supreme Court of the United States held that the Texas statute violated due process because it regulated private, non-commercial, and consensual sodomy between adults and furthered no legitimate state interest. Id. at 578. Of significance to the Toghill decision and Hamilton's case, was the Court's qualification that the case "[did] not involve minors[,]" "persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused[,]" or "public conduct or prostitution." Id. This qualification was based, in part, on the Court's historical analysis of sodomy prohibitions:

> Laws prohibiting sodomy do not seem to have been enforced against consenting adults acting in private. . . . Instead of targeting relations between consenting adults in private, 19th-century sodomy prosecutions typically involved relations between men and minor girls or minor boys, relations between adults involving force, relations between adults implicating disparity in status, or relations between men and animals.

Id. at 569 (internal citation omitted).

The Supreme Court of Virginia relied on this qualification to reject petitioner's claim, observing that "Lawrence simply does not afford adults with the constitutional right to engage in sodomy with minors[,]" and "Lawrence did not prevent [Virginia] Code § 18.2-361(A) from being constitutional and enforceable as applied to sodomy between adults and minors." Toghill, 768 S.E.2d at 679 (citing McDonald v. Commonwealth, 645 S.E.2d 918, 924 (Va. 2007)). The Toghill court then invalidated § 18.2-361(A) to the extent its provisions apply to private, non-commercial and consensual sodomy involving adults, but held that the statute did not violate the Constitution when it was applied to conduct between adults and minors, id. at 681, and concluded that Toghill did not have standing to bring a facial challenge to the constitutionality of

Virginia Code § 18.2-361(A) because the statute could be constitutionally applied to his criminal conduct which involved a minor. Id.

It is well-established that "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others." Woollard v. Gallagher, 712 F.3d 865, 882 (4th Cir. 2013) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 610 (1973)). The relevant question, therefore, is whether petitioner may bring a challenge to the facial validity of Virginia's sodomy statute given the narrowing construction imposed by the Supreme Court of Virginia.

The Court concludes that he may not. "A State's highest court is unquestionably 'the ultimate exposito[r] of state law,'" Riley v. Kennedy, 553 U.S. 406, 425 (2008) (quoting Mullaney v. Wilbur, 421 U.S. 684, 691 (1975)), and "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas." Bradshaw v. Richey, 546 U.S. 74, 76 (2005). The Supreme Court of Virginia has held that § 18.2-361(A) continues to proscribe "sodomy involving children, forcible sodomy, prostitution involving sodomy, and sodomy in public." Toghill, 768 S.E.2d at 681. Because the Commonwealth's highest court has narrowed the reach of the statute, federal courts are bound by its decision as an authoritative interpretation of state law. See United States v. Thirty-Seven (37) Photographs, 402 U.S. 363, 369 (1971).[9]

Hamilton argues that Toghill is irrelevant to his case because his conviction was rendered before the Virginia court narrowed the statute. See [Dkt. No. 18] at 2-5. This argument is also

---

[9] Although federal courts are limited in their authority to narrow constructions of state statutes, see Stenberg v. Carhart, 530 U.S. 914, 944 (2000), state courts lack any such limitation. Indeed, the Fourth Circuit has recognized the "clear and express requirement of Virginia law that Virginia courts interpret state statutes so as to save them from unconstitutionality." Planned Parenthood of the Blue Ridge v. Camblos, 155 F.3d 352, 378 (4th Cir. 1998).

16

unpersuasive. The Supreme Court has "long held that a statute as construed [by a state's highest court] 'may be applied to conduct occurring prior to the construction, provided such application affords fair warning to the defendan[t].'" Osborne v. Ohio, 495 U.S. 103, 115 (1990) (quoting Dombrowski v. Pfister, 380 U.S. 479, 491 n.7 (1965)). Petitioner cannot argue that he did not have fair notice that his actions were criminal at the time he committed them. Regardless of the characterization of Lawrence and the constitutionality of § 18.2-361(A), engaging in sexual acts with a minor was and remains a prohibited act. Because the overbreadth of the relevant statute has been authoritatively addressed by the Supreme Court of Virginia, the statute "may be [constitutionally] applied to [petitioner's] prior conduct foreseeably within its valid sweep." United States v. Thirty-Seven (37) Photographs, 402 U.S. at 375 n.3.

Moreover, the Court is mindful of the deference owed to the state court decisions under AEDPA. See 28 U.S.C. § 2254. The question before the Court is not whether it would uphold Virginia's sodomy statute in the first instance, but whether the state habeas court's decision, relying on Toghill was "contrary to" or "an unreasonable application of" federal law as interpreted by the United States Supreme Court. The Court cannot reach that conclusion. Lawrence only stands for the proposition that a state may not criminalize sodomy between "two adults who [acted] with full and mutual consent from each other." 539 U.S. at 578. It did not address cases involving sodomy with a minor or other instances where consent may not be present. Id.; see also Lopez v. Smith, 135 S. Ct. 1, 4 (2014) (cautioning lower courts against framing Supreme Court precedent at "such a high level of generality" on review under AEDPA).

The Supreme Court of Virginia's determination that § 18.2-361(A) was not facially invalid under Lawrence precludes federal habeas relief because "'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86,

17

101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Indeed, as the dissenting judge in MacDonald pointed out, "reasonable jurists could disagree on whether Lawrence represented a facial or as-applied invalidation of the Texas sodomy statute." MacDonald, 710 F.3d at 170 (Diaz, J., dissenting); compare Massachusetts v. U.S. Dep't of Health & Human Servs., 682 F.3d 1, 8 n. 4 (1st Cir. 2012) (characterizing Lawrence decision as facial invalidation of statute), and Sylvester v. Fogley, 465 F.3d 851, 857 (8th Cir. 2006) (same), with D.L.S. v. Utah, 374 F.3d 971, 975 (10th Cir. 2004) (explaining that Lawrence "invalidat[ed] Texas' sodomy statute as applied to consensual, private sex between adults"), and Muth v. Frank, 412 F.3d 808, 812 (7th Cir. 2005) (characterizing Lawrence as holding that the Texas sodomy statute "was unconstitutional insofar as it applied to the private conduct of two consenting adults").

There is no dispute that the facts of petitioner's case are materially distinguishable from those in Lawrence; instead of acting with a consenting adult, petitioner sexually assaulted multiple children over an extended period of time. Under these facts, and the plain language of the decision in Lawrence, the Court cannot conclude that the state courts' habeas decision was contrary to or an unreasonable application of existing Supreme Court precedent.[10] Accordingly, petitioner's Claim I will be dismissed.

### D. Claim II

In his second claim, Hamilton alleges that he received ineffective assistance of trial counsel because counsel failed to "object to the Commonwealth's arguments that he be

---

[10] Respondent also argues that the Fourth Circuit decision in MacDonald was wrongly decided, raising the issue to preserve it for appeal. [Dkt. No. 14] at 25. Recognizing that this Court cannot overrule a decision of the Fourth Circuit, the Court expresses no opinion as to this argument.

sentenced for crimes not included in the request for extradition in violation of the Extradition Treaty between the United States and Poland." Amend. Pet. at 14.

To prevail on an ineffective assistance of counsel claim, petitioner must meet the two-pronged test established in Strickland v. Washington, 466 U.S. 668 (1984). Under this test, petitioner must prove both that his attorney's performance was so deficient "that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and that this performance resulted in prejudice to petitioner. Id. at 687. To meet the second prong, petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The two prongs, deficient performance and prejudice, constitute "separate and distinct elements." Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). Therefore, a court can appropriately dismiss an ineffective assistance of counsel claim if the petitioner fails to satisfy either prong. Strickland, 466 U.S. at 687. A court reviewing a claim of ineffective assistance of counsel must presume that counsel acted competently, and should determine the merits of the claim based on the information available to the attorney at the time counsel represented the petitioner. See, e.g., Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000).

Hamilton argues that his trial counsel was ineffective because he failed to raise a "rule of specialty" objection. Amend. Pet. 14-16. The extradition treaty between the United States and Poland provides, in relevant part, that a "person extradited under this Treaty may not be detained, prosecuted, sentenced, or punished in the Requesting States except for . . . (a) an offense for which extradition has been granted; . . . (b) an offense committed after the extradition of the person; or (c) an offense for which the executive authority of the Requested State has consented to the person's detention, prosecution, sentencing, or punishment." [Dkt. No. 9] at 360-61.

19

Hamilton alleges his trial counsel should have objected to the Commonwealth's arguments that the court should sentence him for additional offenses by proffering his failure to appear at the October 7, 2009, plea hearing, and the inclusion of uncharged offenses in its sentencing memorandum, as violations of the extradition treaty. See Amend. Pet. at 17-18.

This claim is meritless. The rule of specialty merely prohibits requesting states "from charging the defendant with crimes different [from] those for which he was extradited." See Antwi v. United States, 349 F. Supp. 2d 663, 673 (S.D.N.Y. 2004). The petitioner was convicted of the crimes charged in the indictment, and the rule does not "purport to regulate the scope of proof admissible into evidence." Id. (quoting United States v. Flores, 538 F.2d 939, 944 (2d Cir.1976)). Thus, any argument trial counsel might have made about the rule of speciality would have had no bearing on the evidence considered by the court in sentencing petitioner. See United States v. Davis, 954 F.2d 182, 187 & n.2 (4th Cir. 1992).

Evidence of Hamilton's prolonged abuse of multiple victims, and his failure to appear for the first scheduled plea were relevant considerations for the state court at sentencing. Contrary to petitioner's claims, he was not "detained, prosecuted, sentenced, or punished" for his other acts; rather, the information presented at the sentencing hearing, including the victim impact statements, was admitted to enable the sentencing court to evaluate Hamilton's remorse, accountability, and likelihood of reoffending. As the Fourth Circuit held in Davis, a trial court's consideration of unadjudicated bad acts during sentencing did "not mean [the defendant] was punished for those acts." Id.

Moreover, petitioner cannot demonstrate that he was prejudiced by counsel's failure to raise a rule of speciality objection. At sentencing, the sentencing judge stated that petitioner was not on trial for fleeing the country. Sentencing Hr.'g Tr., 60-61, June 24, 2011. And, as the state

habeas court pointed out, any reference to uncharged conduct was "overshadowed by the fact that the victims themselves stated Hamilton's behaviors were not evidence of a 'one time' lack of judgment; all of the victims present at sentencing testified that Hamilton abused them repeatedly and over a long period of time." [Dkt. No. 14], Ex. A at 5. Similarly, on petitioner's motion for reconsideration of his sentence, he raised the same arguments about being punished for uncharged conduct, and that motion was denied because none of the arguments "would affect the decision of the [sentencing] [c]ourt." See Mot. Recons. Sentence, Commonwealth v. Hamilton, No. FE-2006-1470 (Va. Cir. Ct. Oct. 11, 2011); Letter Opinion from Judge Brett A. Kassabian, Oct. 12, 2012; Final Order, Commonwealth v. Hamilton, FE-2009-1470 (Va. Cir. Ct. Oct. 12, 2011). The denial of that motion further supports the conclusion that petitioner's sentence was not based on information that violated the terms of his extradition. Therefore, the Virginia courts' refusal to grant relief was not an unreasonable application of United States Supreme Court precedent and Claim II will be dismissed.

### E. Claim III

Petitioner further claims that trial counsel was ineffective for failing to memorialize the plea agreement and failing to object to violations of the plea agreement. Amend. Pet. at 25. The plea agreement appears to be a letter from petitioner's trial counsel to the Commonwealth's Attorney, outlining the terms as understood by petitioner. See [Dkt. No. 9] at 338-39. Paragraph three of the letter stated that petitioner would plead guilty to five charges, including two charges of aggravated sexual battery, and three charges of indecent liberties with a child by a person in a custodial position. Id. at 338. Paragraph four stated that the contents of any discussions with Detective Hinson regarding any illegal conduct by petitioner involving children would not be

used against him, except as the discussions pertained to the five charges to which he was to plead guilty. Id.

The failure to object claim essentially repeats the issue in Claim II that counsel should have objected to arguments made by the Commonwealth at sentencing. The arguments at issue in this claim are references to portions of the debriefing transcripts unrelated to the five charges to which he pleaded guilty. See Amend. Pet. at 27-29. This argument is without merit. A review of the sentencing transcript shows that counsel did, in fact, raises numerous objections to both the alleged violations of the plea agreement and to what was included in the Commonwealth's sentencing memorandum during the hearing. See, e.g., [Dkt. No. 9] at 258-59 (objecting to reference to a polygraph being included); id. at 259 (objecting to a reference to additional people involved in negotiations of the plea agreement). Most significant is trial counsel's objection that any reference to the debriefing transcripts outside of evidence relevant to the five charges "infringes on the plea agreement that [petitioner] had with the Commonwealth." Id. at 261. After reviewing the memorandum and counsel's objections, the sentencing court ruled that merely including the debriefing transcripts with the sentencing memorandum was not a violation of the plea agreement. See id. at 264. On this record, there is no basis to petitioner's claims that counsel failed to raise a proper objection.

Moreover, petitioner cannot demonstrate any prejudice as a result of the transcripts being included. During sentencing, the judge clearly distinguished between conduct that could be considered in reaching an appropriate sentence and conduct that could not. The court stated that it "understood the agreement only allowed consideration of the briefing transcripts as to the five charges at hand, despite any additional argument from the Commonwealth." See [Dkt. No. 14], Ex. A at 5. Further, any information in those transcripts regarding bad acts could not have been

22

prejudicial, given that the court "heard substantially the same information from the [five] victims," and concluded from that testimony that Hamilton's abuses occurred over a long period of time, and on more than one occasion with each child." Id. Even assuming that counsel's objection was deficient in some respect, petitioner cannot establish that he was prejudiced.

Separately, petitioner contends that the plea agreement contemplated a guilty plea to a set of crimes including three "class 6 felonies." Amend. Pet. at 31. Petitioner claims that he was actually indicted for a set of crimes including two Class 5 felonies without his agreement, and that his trial counsel failed to object to this change. Id. That is, rather than charging petitioner with three counts of indecent liberties with a child by a person in a custodial position, under Virginia Code § 18.2-370.1, the Commonwealth changed the charges to indecent liberties with a child, under Virginia Code § 18.2-370. The difference between these two sections is that § 18.2-370.1 is a Class 6 felony, with a maximum penalty of 5 years, while § 18.2-370 is a Class 5 felony, with a maximum penalty of 10 years. See Va. Code. § 18.2-10 (authorizing "a term of imprisonment of not less than one year nor more than 10 years" for the conviction of a Class 5 felony and "a term of imprisonment of not less than one year nor more than five years" for the conviction of a Class 6 felony). Petitioner claims that his trial counsel's failure to object to this change constituted ineffective assistance. Amend. Pet. at 31.

Irrespective of any deficiency, petitioner cannot demonstrate that he was prejudiced by this change because the difference is negligible in light of the actual sentence received. In Virginia, aggravated sexual battery provides for a maximum sentence of 20 years for each count. Va. Code Ann. § 18.2-67.3. The sodomy count carries a maximum sentence of 5 years. See id. § 18.2-361(A). Each charged count of indecent liberties with a minor carries a maximum penalty of 10 years. See id. § 18.2-370. Thus, Hamilton's actual exposure was for 65 years—two counts

23

of aggravated sexual battery (40 years), one count of sodomy (5 years), and two counts of indecent liberties (20 years). Indeed, the Commonwealth asked for a sentence of 65 years in its sentencing memorandum. See Sentencing Memorandum at 1, Commonwealth v. Hamilton, No. FE-2006-1470 (Va. Cir. Ct. June 20, 2011). Assuming petitioner should have been charged with three violations of 18.2-370.1, rather than the charges of sodomy and indecent liberties, his exposure would have been lowered to a maximum of 55 years, which is the actual sentence imposed by the sentencing court. Regardless of any error in how the crimes were charged, petitioner received a sentence consistent with the maximum penalties he agreed to in his plea agreement.

Additionally, the sentencing court found the recommended guideline sentence of 13 years "wholly unacceptable because of the prolonged duration and nature of the criminal acts" when he imposed a total sentence of 55 years. See [Dkt. No. 14], Ex. A at 5. see also Other Sexual Assault Sentencing Guideline Sheet, Commonwealth v. Hamilton, No. FE-2009-1470 (Va. Cir. Ct. June 24, 2011) (calculating the guideline range for the charges against Hamilton). The court justified its sentencing decisions by pointing to petitioner's multiple violations and his abuse of a position of trust, which, in the court's view, warranted a greater sentence than recommended, regardless of the actual charged crimes. Id. Because any slight reduction in the guideline range would not have made a difference to the actual sentence, petitioner cannot demonstrate that an objection to the indicted charges would have resulted in any change to the resulting sentence. For these reasons Claim III will be dismissed.

### F. Claim IV

In Claim IV, petitioner contends that his appellate counsel was ineffective for referencing the incorrect transcript exhibit in his appeal. Amend. Pet. at 32-33. On direct appeal, petitioner

argued that the transcripts of his debriefing should not have been introduced at sentencing. See Petition for Appeal, No. 1922-11-14 (Va. Ct. App. June 27, 2012). Specifically, appellate counsel referred only to the transcript attached as Exhibit 1 to the Commonwealth's sentencing memorandum. That was a transcript of petitioner's first interview which preceded his plea agreement. Commonwealth's Sentencing Mem. Ex. 1, Commonwealth v. Hamilton, No. FE-2009-1470 (Va. Cir. Ct. June 20, 2011). Petitioner claims appellate counsel was ineffective because he did not also reference Exhibit 2, the transcript of the debriefing which occurred after the plea agreement, in his petition for appeal. Amend. Pet. at 33.

Petitioner cannot demonstrate that he was prejudiced by any alleged failure on the part of appellate counsel. The record indicates that Exhibit 2 was considered by the appellate court, as reflected in the per curiam opinion which referenced the multiple interviews Hamilton gave to Detective Hinson. As the court explained, Exhibit 2 was

> a transcript of a series of interviews . . . which took place pursuant to the plea agreement. The portions of the interviews that did not pertain to the five victims associated with the five charges to which appellant pled guilty were redacted and not made part of the record at sentencing.

Hamilton v. Commonwealth, No. 1922-11-4 at 4 (Va. Ct. App. June 27, 2012), [Dkt. No. 9] at 343. Despite any omission or failure on the part of petitioner's appellate counsel to explicitly reference Exhibit 2, the Court of Appeals nonetheless considered the issue and implicitly found no violation of the plea agreement. Id. Accordingly, because petitioner cannot demonstrate that he was prejudiced on appeal, Claim IV will be dismissed.

### G. Claim V

In Claim V, petitioner argues that the Commonwealth concealed exculpatory evidence at sentencing in violation of Brady v. Maryland, 373 U.S. 83 (1963). He also argues that the Commonwealth violated Napue v. Illinois, 360 U.S. 264 (1959) by presenting or failing to

correct evidence that it knew was false. Amend. Pet. at 36. The sole evidence that petitioner

points to as violating these principles is that the Commonwealth "allowed to stand Detective

Hinson's false assertion that [petitioner] had stated he was sexually abused but could not

remember the name of his abuser." Id. In contradiction of that evidence, petitioner alleges that he

identified his abuser to the police by name and by his relationship with other family members. Id.

at 37-38.

 Petitioner told Detective Hinson that after "six weeks of solitude" he began to remember

information about abuse he had suffered at the hands of his uncle, "Uncle Herb." [Dkt. No. 7] at

98, 100. He asserted that one or two of his cousins had also alleged that they had been abused by

this uncle. Id. When questioned, Hamilton could not remember "Uncle Herb's" last name, and

when told that the detective had an obligation to investigate this allegation he stated that his

uncle was dead and "there's nothing anyone can do." Id. at 99-100. Petitioner suggested that he

abused his victims because of the abuse he suffered from his uncle. Id. at 99.[11] At sentencing, the

Commonwealth argued that these assertions are "almost too convenient to believe" because he

"couldn't even remember the uncle's name or any specific events of that abuse." [Dkt. No. 9] at

309-10.

 As an initial matter, the state habeas court properly concluded that both petitioner's

Brady and Napue claims were procedurally defaulted because petitioner did not raise the claims

at the time of his sentencing or on direct appeal. See [Dkt. No. 14], Ex. A. at 6-7. A careful

review of each of the state court proceedings confirms this conclusion; at no time did petitioner

raise either the alleged Brady or Napue violation as an assignment of error. Virginia courts have

---

[11] Specifically, Hamilton stated "you know it just makes sense to me . . . with everything that's, that, that happened early on in my life, with the abuse and everything else, where I'm at now, [its] my personal opinion. No one's born doing what I do, do you know what I mean." [Dkt. No. 7] at 99.

long held that non-jurisdictional issues that could have been raised at trial or on appeal are not cognizable on habeas review. See, e.g., Jackson v. Warden of Sussex I State Prison, 627 S.E.2d 776, 782 (Va. 2006); Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974); accord Roach v. Angelone, 176 F.3d 210, 221 (4th Cir. 1999). The Fourth Circuit has held that this procedural default rule constitutes an independent and adequate state ground for denial of a habeas petition. See Mu'Min v. Pruett, 125 F.3d 192, 196-97 (4th Cir. 1997). Petitioner does not argue that he properly raised these issues on direct appeal. As such, his Brady and Napue claims are procedurally defaulted, and he is ineligible for relief unless an exception to procedural default applies; however, petitioner raises no such argument.

Even if the Court could properly review these claims, they both fail. First, the information that was allegedly not produced was "available from another source, namely, Hamilton himself." [Dkt. No. 14], Ex. A. at 6. There can be no Brady violation if the concealed information is known to the defense. See United States v. Roane, 378 F.3d 382, 402 (4th Cir. 2004) ("We have explained that information actually known by the defendant falls outside the ambit of the Brady rule."); Juniper v. Warden, 707 S.E.2d 290, 299 (Va. 2011). At the time of sentencing, petitioner knew that he had named his abuser and could have taken steps to correct any errors. In addition, the state court found that whether petitioner could name his accuser was not material at sentencing. [Dkt. No. 14], Ex. A at 6. Both Brady and Napue require that a petitioner seeking relief must demonstrate that there is a "reasonable probability that the disclosure of the withheld evidence or the correction of . . . false testimony could have produced a different result." See United States v. Bartko, 728 F.3d 327, 340-41 (4th Cir. 2013). Given the victims' impact statements and petitioner's opportunity to submit his own sentencing position papers arguing that his being abused as a child should be considered a mitigating factor, it was

not unreasonable for the state court to conclude that the name of petitioner's abuser was not material in reaching a sentencing decision.

Similarly, petitioner has not made any argument that disclosure of the name of his alleged abuser to the sentencing court establishes a "reasonable probability" that his sentence would have been different had the court had that information. The state habeas judge was the original sentencing judge, and therefore in the best position to determine what would have been meaningful mitigation evidence. This Court cannot find that the decision that the identity of Hamilton's abuser was not material at sentencing was contrary to or an unreasonable application of Brady or Napue, and thus Claim V must be dismissed.

### III. CONCLUSION

For the reasons stated above, respondent's Motion to Dismiss [Dkt. No. 13] will be granted by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 29th day of December, 2017.

Alexandria, Virginia

_____ /s/ _____
Leonie M. Brinkema
United States District Judge

28